UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

WILLIAM EARL SHERMAN,

                Plaintiff,

v.

DEREK BESEAU et al.,

                Defendants.

_____/

Case No. 2:25-cv-247

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following URF staff in their individual and official capacities: Warehouse Manager **Derek Beseau** and "Quarter Master/Store Keeper" **Unknown Nolan**. (Compl., ECF No. 1, PageID.2, 5.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

On February 3, 2025, Defendant Beseau received a "Securepak"[2] package sent to Plaintiff. (*Id.*, PageID.6.) On February 6, 2025, Defendants Beseau and Nolan distributed the Securepaks they had received to the inmate recipients. (*Id.*) During that distribution, "one or both of"[3] Defendants Beseau and Nolan did not check the identification of the individuals receiving the Securepaks, which allowed an inmate to forge Plaintiff's signature and receive Plaintiff's package. (*Id.*) Later that same day, Plaintiff attempted to collect his Securepak. (*Id.*) Defendant Nolan told Plaintiff that he did not have anything for Plaintiff, and that Plaintiff needed to "wait for a make-up callout." (*Id.*)

One week later, on February 13, 2026, Plaintiff again spoke to Defendant Nolan. (*Id.*) At that time, Defendant Nolan told Plaintiff that if Plaintiff asked about his Securepak again he would be put in segregation. (*Id.*) On February 19, 2025, Plaintiff received a letter from his mother, stating that "she had spoken to Access Securepak" who confirmed that Plaintiff's Securepak had been delivered and signed for on February 3. (*Id.*)

Plaintiff subsequently filed a grievance. (*Id.*) On March 14, 2025, Plaintiff's grievance was denied because there was a signed receipt showing that Plaintiff had received his Securepak. (*Id.*) Plaintiff alleges that the signature on that receipt was not his. (*Id.*) He appealed that decision, but that appeal was denied because referenced exhibits were missing. (*Id.*, PageID.7.) Plaintiff again appealed, and that was also denied. (*Id.*)

---

[2] At MDOC facilities, "[t]he public may send a prisoner a package of items that have been pre-authorized through the Friends and Family Program (FFP), also known as SecurePak." *See* https://www.michigan.gov/corrections/for-families/send-a-prisoner-goods-or-money (last visited June 25, 2026).

[3] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

After Plaintiff's grievance was denied, Plaintiff filed a complaint initiating the instant case. Based on the foregoing allegations, Plaintiff raises First Amendment mail interference claims, Fourteenth Amendment procedural due process claims regarding the deprivation of his personal property and regarding Plaintiff's use of the grievance procedure, claims regarding the violation of federal criminal law, and claims regarding the violation of the MDOC's policies. (*See id.*, PageID.8.) Plaintiff seeks monetary damages and injunctive relief in the form of a transfer to a different facility. (*Id.*)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants Beseau and Nolan in both their individual and official capacities. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune from suit in the federal courts under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich.*

6

*Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages and injunctive relief in the form of a transfer to a different facility. (Compl., ECF No. 1, PageID.8.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against Defendants Beseau and Nolan in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.")

In addition to monetary damages, Plaintiff also seeks injunctive relief. Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at URF, which is where he avers that Defendants Beseau and Nolan are employed. Thus, Plaintiff cannot maintain his claims for injunctive relief against Defendants.

Therefore, for all of the reasons set forth above, Plaintiff has failed to state a claim against Defendants Beseau and Nolan in their official capacities upon which relief can be granted. Accordingly, Plaintiff's official capacity claims against Defendants Beseau and Nolan will be dismissed for failure to state a claim.

### B.       First Amendment Mail Interference Claim

Plaintiff alleges that Defendants Beseau and Nolan violated Plaintiff's First Amendment rights when they interfered with his receipt of mail by allowing a different inmate to receive Plaintiff's Securepak package. (Compl., ECF No. 1, PageID.5, 6, 7, 8.)

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati*

8

*v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987). Additionally, "isolated instances of interference with prisoners' mail" do not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519, at *2 (6th Cir. Aug. 11, 2000) (*citing Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation.")); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated incidents" of interference with prisoners' rights do not rise to the level of a First Amendment violation). Moreover, the Sixth Circuit has held that even though a prison employee "was shown to have negligently missorted [an inmate's mail]," that "negligence was insufficient to establish a constitutional violation." *Barker v. Sowders*, No. 98-5506, 1999 WL 427170, at *1 (6th Cir. June 18, 1998) (citation omitted).

Here, Plaintiff alleges only one instance in which Defendants Beseau and Nolan interfered with Plaintiff's mail by allowing someone else to pick up a package that was intended for Plaintiff. (Compl., ECF No. 1, PageID.6.). An isolated incident of interference with a prisoner's mail is insufficient to establish a First Amendment violation. Furthermore, Plaintiff's allegations do not indicate that Defendants Beseau or Nolan intentionally interfered with Plaintiff's mail, and negligent "missort[ing]" of mail on one occasion is insufficient to show a constitutional violation. *See Barker*, 1999 WL 427170, at *1. Accordingly, Plaintiff has failed to state a claim for violation of his First Amendment right to receive mail, and the Court will dismiss that claim.

**C.    Fourteenth Amendment Due Process Clause Claims**

Plaintiff alleges that Defendants Beseau and Nolan deprived Plaintiff of his Securepak package and that Plaintiff's grievance regarding that package was denied. (Compl., ECF No. 1, PageID.6–7.) The Court will construe Plaintiff's allegations as raising claims for violation of Plaintiff's rights under the Fourteenth Amendment Due Process Clause regarding the deprivation of his personal property and his use of the grievance procedure.

**1.    Deprivation of Personal Property**

With respect to Plaintiff's Fourteenth Amendment due process claims regarding the deprivation of his personal property, as explained below, any due process claim regarding the deprivation of Plaintiff's property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant

10

to an established state procedure. See *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding the deprivation of his Securepak package. Therefore, the Court will dismiss that claim.

### 2.      Use of Grievance Procedure

With respect to any intended Fourteenth Amendment due process claims regarding Plaintiff's use of the grievance procedure and the denial of his grievance, as an initial matter, Plaintiff does not allege that Defendants Beseau and Nolan were involved in the denial of his grievance and grievance appeals. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Regardless, various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue*, 80 F. App'x at 430; *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also*

11

*Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any response, or lack thereof, to Plaintiff's grievances did not deprive Plaintiff of due process.

Accordingly, Plaintiff's Fourteenth Amendment due process claims regarding his use of the grievance procedure will be dismissed for failure to state a claim.

### D.    Violation of Federal Criminal Laws

Plaintiff claims that Defendants engaged in "unlawful distribution of federal mail," committed "mail fraud in excess of $100.00," and showed a "negligent and wanton disregard for federal law regarding packages ordered by the public[.]" (Compl., ECF No. 1, PageID.5, 6, 8.)

Federal criminal statutes do not confer rights on private citizens. *See United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) (holding that "the district court properly dismissed Oguaju's claim pursuant to 18 U.S.C. §§ 241 or 242 because Oguaju has no private right of action under either of these criminal statutes" (citation omitted)); *Am. Post Workers Union, AFL-CIO v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) ("Equally important is the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions."). Further, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

Accordingly, any intended § 1983 claims for the violation of federal criminal laws will be dismissed.

**E.**    **Claims Regarding the Violation of the MDOC's Policies**

Plaintiff claims that Defendants violated the MDOC's policies as related to the delivery of Securepak packages. (Compl., ECF No. 1, PageID.7, 8.) The Court construes this allegation to raise a claim under § 1983 regarding the violation of MDOC policy.

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that Defendants violated the MDOC's policies fail to state a claim under § 1983.

Additionally, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated MDOC policy fails to raise a cognizable federal claim.

Accordingly, Plaintiff's § 1983 claims regarding alleged violations of the MDOC's policies will be dismissed for failure to state a claim.

### Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v.*

13

*Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated:    July 7, 2026                          /s/ *Maarten Vermaat*
                                                Maarten Vermaat
                                                United States Magistrate Judge